(31 Abb. N. C. 430; 23 Civ. Proc. R. 443; 8 Misc. Rep. 484.)
### DALTON v. VANDERVEER.

(Supreme Court, Special Term, Kings County. May 24, 1894.)

EQUITY PRACTICE — FAILURE TO PROVE EQUITABLE CAUSE OF ACTION — DISMISSAL.

Where a complaint states a cause of action which is within the jurisdiction of equity, and is not an action at law, and the evidence given on the trial fails to sustain such equitable cause of action, but shows a cause of action at law, the complaint will nevertheless be dismissed, as the distinction between legal and equitable actions still exists, though the forms have been abolished.

Action by George W. Dalton against John H. Vanderveer. Complaint dismissed.

Magner & Hughes, for plaintiff.
A. G. McDonald (Herbert T. Ketcham, of counsel), for defendant.

GAYNOR, J. The complaint alleges in sum and substance that the defendant owned a tract of 65 acres of land, and in order to secure the experience and assistance of the plaintiff in laying it out in lots and streets, and selling it off by lots at auction or private sale, entered into an agreement of copartnership with the plaintiff, whereby the plaintiff was given a certain interest in common with the defendant in the lands and the future proceeds of sales thereof; that out of such proceeds the defendant was first to be paid the moneys expended in preparing the land for sale by lots, as aforesaid, the agreement requiring him to advance it all, and then $3,000 an acre for the tract, after which the overplus, if any, should be divided between the parties, the plaintiff's share to be one-quarter; and that after the plaintiff had so plotted and prepared the land for sale, and a large number of lots had been actually sold, the defendant notified the plaintiff that he dissolved the partnership, and refused to go any further with the enterprise as a joint one; and the prayer is for a judgment declaring the plaintiff to be a part owner of the land, for the appointment of a receiver to sell the land, and for an accounting and division. The answer denies the copartnership, and alleges that the plaintiff was only the employe of the defendant. The proof shows that there was no copartnership, but that the plaintiff was employed as an agent by the defendant to prepare the land for sale and sell it, as aforesaid; and that for his services he was to be paid one-quarter of the overplus, as already stated; and that after the contract had been partly performed, a large number of sales having been made, the defendant discharged the plaintiff. The cause of action which the proof presents is therefore one for damages for breach of contract for services. The amount already realized from sales is easily ascertained. Past sales furnish evidence of the time and effort it would take to sell off all of the lots, and also of the price for which the lots can be sold, and it would not be difficult to otherwise prove their value; so that no difficulty would be encountered in proving the damages which the plaintiff has sustained by the breach of the contract. In this state of the case, may the court go on and assess the damage in this, or must

the complaint be dismissed?  The complaint states a case which is within the jurisdiction of equity, and is not an action at law, but the evidence fails to sustain the complaint, and also fails to make out any case which is within the jurisdiction of equity.  This being so, must not the complaint be dismissed?  The origin of the high court of chancery in England was due wholly to the inability, and, to a limited extent, the unwillingness, of the common-law courts to entertain and give relief in every case, and thus meet all the requirements of justice.  The common-law courts paid such deference to forms and precedents that they became slaves to them.  Their jurisdiction was thus circumscribed.  They adhered to certain precise writs and rigid forms of action which were not sufficiently comprehensive to enable them to give adequate redress in some cases of injustice and wrong, or to give any redress in many others.  In such cases the aggrieved person was remediless, except he could get a hearing of the king himself.  Petitions by those in such case were, therefore, frequently presented to the king, asking for relief of him as matter of grace, because it could not be got of his courts. From the fact that the king usually referred such petitions to his secretary, called his "chancellor," they came in course of time to be presented to the chancellor directly by the suitors themselves; and thus, gradually and at a time which history cannot enable us to precisely fix, the court of chancery became to be established.  As is seen, its jurisdiction was wholly extraordinary.  Relief was afforded by it only in those cases wherein the common-law courts either could give no redress at all, or could not give adequate redress; and any one coming to chancery with a case which did not need its extraordinary jurisdiction, but could be adequately dealt with in the common-law courts, was dismissed for lack of jurisdiction.  Thus, side by side there existed the court of chancery and the common-law courts, each with a distinct jurisdiction, the test of chancery's jurisdiction in any given case being that the suitor could either get no relief, or could not get adequate relief, in a court of common law; and, therefore, necessarily, there also grew up, not only two distinct systems of practice in these courts, but also two distinct systems of substantive jurisprudence, that in the court of chancery being the system which we call "equity."  In the formation of the government of this state these two distinct kinds of courts and systems were given a place from the beginning, and the court of chancery here was clothed with the general jurisdiction and powers of the high court of chancery in England.  Separate courts thus administered these separate systems of jurisprudence in this state until, by the constitution of 1846, the court of chancery was abolished, and its jurisdiction and powers were devolved upon the supreme court.  From that time on the same court has administered justice under both systems; but, all the same, the two systems have necessarily preserved their identity and continued to exist. The court of chancery is gone, but the system of equity jurisprudence remains, and is still administered, but by the same court which also administers the common-law system.  There is only one court to administer both systems, but they remain distinct systems.  This

much have I said, because we seem sometimes to lose sight of it, and think otherwise. The cause of this is no doubt the enactment in our first Civil Procedure Code of 1848, and found in our present revised Code of Civil Procedure, namely: "There is only one form of civil action. The distinction between actions at law and suits in equity, and the forms of those actions and suits, have been abolished." Section 3339. But this enactment relates only to the two systems of practice, and has no reference to the two systems of substantive jurisprudence. They still exist side by side, but the separate systems of practice under which they were formerly administered have been abolished, and the one system of our practice statute substituted. It is in this view that our court of appeals has said that "the distinction between legal and equitable actions is as fundamental as that between actions ex contractu and ex delicto, and no legislative fiat can wipe it out" (Gould v. Bank, 86 N. Y. 83); and, again, that "the names of actions no longer exist, but we retain in fact the action at law and the suit in equity" (Stevens v. Mayor, etc., 84 N. Y. 304); and, again, that, "although the distinction between actions at law and suits in equity is abolished, the distinguishing features between the two classes of remedies, legal and equitable, are as clearly marked and rigidly observed as they ever were, and this is necessary to the administration of justice in an orderly manner and the preservation of the substantial rights of suitors" (Chipman v. Montgomery, 63 N. Y. 230). In a word, the forms are all that are changed. The two distinct systems of justice still remain, though they are administered by the same court, under one system of practice.

This brings me down to saying what must be done with this action. Under our existing system, both actions at law and suits in equity being brought in the same court, they are in regular course placed upon separate calendars by the parties themselves; namely, actions at law upon the calendar of causes to be tried by a jury, and equity actions upon the calendar of causes to be tried by the court without a jury. When chancery existed as a separate court, if a suitor came there with a common-law action he was dismissed for lack of jurisdiction; but now, if a plaintiff place an action at law upon the equity calendar, and notice it for trial there, he may not be dismissed out of court. The court may, of its own motion, refuse to hear it, and send it to the jury calendar; or, if the court be willing to hear it, the defendant may, nevertheless, by demanding a jury trial, have the cause sent to the jury calendar; and, if he did not so demand, he waives the right to a jury trial, and confers jurisdiction upon the court to hear it without a jury; and the rule is the same whichever side has so placed it upon the calendar and noticed it. Code Civ. Proc. § 1009. The cause of action stated in the complaint in this action being wholly equitable, and in no aspect constituting an action at law, the case was properly placed upon the equity calendar and noticed for trial there by the parties. For the same reason the defendant had no right to demand a jury trial. The case presented by the complaint was not one which entitled the plaintiff to a jury trial, and he was bound by the complaint in that respect. It cannot

therefore be claimed that he has waived a trial by the jury of the cause of action presented by the evidence. Nor can it be said that, by failure to plead in his answer that the defendant had an adequate remedy by an action at law, he has waived his right to so claim now. When chancery existed as a separate court, and a suitor came there asking for equitable relief upon a statement of facts in his bill upon which he could get full, complete, and adequate relief in an action at law, the chancellor was free to so inform him, and refuse to be vexed by his suit; but in order that the defendant might so insist, and have the suit dismissed on his motion, it was necessary for him to so plead in his answer, in default of which he was held to have waived that defense, and submitted the cause to the chancery for equitable disposition, provided that court could in the end make any such disposition of it; and such is still the rule of pleading. Grandin v. Le Roy, 2 Paige, 509; Wiswall v. Hall, 3 Paige, 313; Le Roy v. Platt, 4 Paige, 77; Truscott v. King, 6 N. Y. 147; Town of Mentz v. Cook, 108 N. Y. 504, 15 N. E. 541; Ostrander v. Weber, 114 N. Y. 95, 21 N. E. 112; Watts v. Adler, 130 N. Y. 646, 29 N. E. 131. But the facts stated in the complaint made the action at bar an equitable one solely, and not of legal cognizance, and therefore the defendant could not properly have pleaded that the plaintiff had an adequate remedy in an action at law. He was not required to plead that, upon the actual facts which the plaintiff had not pleaded, the plaintiff could get adequate redress in an action at law. He was only required to plead to the complaint; and the complaint being framed solely for equitable relief, it being found upon trial that the plaintiff is not entitled to such relief, the court cannot entertain the action to give judgment for damages or to amend the complaint so as to change the action into one at law. Wheelock v. Lee, 74 N. Y. 495; Oakville Co. v. Double-Pointed Tack Co., 105 N. Y. 658, 11 N. E. 839; Bockes v. Lansing, 74 N. Y. 437. The complaint is therefore dismissed, with costs.