so numerous. Since that time the premises have been rented in floors to many small tenants, and it is claimed to be owing to the existence of the elevated road shortly after this time that this change was made. But it appears from the evidence in the case that with respect to at least a part of the premises a tenant was in 1876 considerably in arrears in his rent, and that the landlord took it off the tenant's hands, and proceeded to rent it in floors, which change does not seem in any way to have been caused by the elevated road. An examination of the evidence upon this point fails to establish that any of the losses of rent alleged to have occurred were due to the maintenance and operation of the road. In regard to the fee damage, there is probably a better basis for the sustaining of the judgment. The road in front of the plaintiff's premises has three tracks. There are three columns in front of the property, and trains run quite frequently. It is claimed that at the present time trains do not run during the night. But it is impossible to conjecture how soon such an innovation may be made. The evidence shows that the property in question has undoubtedly improved considerably in value since the erection of the elevated railroad. But it also appears upon an examination of the evidence that adjoining property has increased to a much greater extent. Property in this locality would naturally, with the increase of the city, become more valuable, and this would have been the case whether the elevated railroad had been erected or not; and when we find adjoining property increasing with greater rapidity we think the conclusion of the court below that the road was a detriment to the property in question was well founded. The interference with its easements of light, air, and access is undoubtedly an impediment to the improvement of the property, and renders the lots less valuable for that purpose. We do not think, however, that the evidence justified an award of $5,000 for injury to the land by reason of the taking of the easements in question, and the award should be reduced to $4,000.

The judgment should be modified by striking therefrom the rental damages, and reducing the award for fee damage to $4,000, and, as so modified, affirmed, without costs. All concur.

---

(17 Misc. Rep. 102.)

### SHIPMAN et al. v. LONG ISLAND R. CO.

(Supreme Court, Special Term, Kings County. May, 1896.)

REVIVAL OF ACTION—LACHES.
  Under Code Civ. Proc. § 757, as amended in 1879, providing that, where a cause of action survives, it shall not abate by the death of a party, but "the court must on motion allow or compel the action to be continued," the court has a discretion as to allowing an action to be continued where moving party has been guilty of laches, whether the action be legal or equitable.

Action by James J. Shipman and others against the Long Island Railroad Company to recover for work, materials, etc. The executors of deceased plaintiff moved for leave to continue the action. Denied.

L. Laflin Kellogg, for the motion.
Delos McCurdy, opposed.

GAYNOR, J.  This action was commenced in 1865, to recover $47,498.52, for alleged work, material, and expenditures in the building of a branch line of railroad for the defendant, and damages for breach of the contract by delays and various refusals by the defendant to do its part of the contract necessary to enable the plaintiffs to seasonably prosecute the work.  The answer alleged full payment for all the work done and material furnished, and set up a counterclaim of $65,000, for alleged faulty work and other breaches of the contract by plaintiffs.  The pleadings show the minute and difficult nature of the issues to be tried, involving the actual details of the enterprise from day to day.  The plaintiff Martin died in the early stages of the action, the date not being given.  The action was referred for trial in 1867.  A hearing was had before the referee in December, 1867, at which one of the plaintiffs was partly examined as a witness.  Nothing else was done in the action except to adjourn the trial from time to time until March 18, 1868, which was the last adjourned date.  At that point the action seems to have been abandoned.  Sixteen years afterwards, viz. in 1884, Shipman, the surviving plaintiff, died, leaving a last will, which named his sons, Charles H. Shipman and James T. Shipman, as executors.  Not until 12 years afterwards, viz. in April, 1896, did the executors cause the will to be probated, and take out letters.  And now, upon a notice of motion given on April 27, 1896, they ask that the court allow them to continue the action.  The president and all others who were officers and directors of the defendant when the action was brought are dead. The lapse of 30 years has probably left the defendant with no one having any knowledge of the many details involved in the controversy.  It is not a case for the granting of the motion, unless the court is without the right to exercise its discretion, and may not refuse.  Is the contention that the court is without such discretion correct?

By the Code of Procedure of 1848, it was provided that an action should not abate by the death of parties plaintiff or defendant if the cause of action survived, and that "the court on motion, at any time within one year thereafter, or afterwards, on a supplemental complaint, may allow the action to be continued."  Section 121.  This was a new provision of law, and its permissive character is to be noted.  By the Revised Code of 1877, it was provided that "the court must, upon a supplemental summons and complaint, or, in its discretion, upon a motion, if made within one year after a decedent's death, in a proper case allow or compel the action to be continued."  Section 757.  This also left a certain discretion to the court, for it was not required to allow a continuance except "in a proper case."  But the provision was amended in 1879 to read that "the court must, upon a motion, allow or compel the action to be continued" (Laws 1879, p. 607); and so it stands now.  Its apparently mandatory terms are to be noted.

In Holsman v. St. John, 90 N. Y. 461, which was an action for damages for breach of contract, the court of appeals held plainly and positively that the court had no discretion under this provision as amended in 1879, but that (to quote from the careful and accurate headnote) "it was obligatory upon the court to grant a motion to revive," and that "no mere lapse of time can defeat the application." The decisions of the special and general terms of the court below, refusing the application for laches, were therefore reversed. But in Lyon v. Park, 111 N. Y. 350, 18 N. E, 863, which was also a common-law action for damages, viz. for fraud, the same court held that the court had discretion in the premises, and could deny the application for laches, notwithstanding the mandatory words of the said section of the Code, and affirmed the decisions of the special and general terms of the court below, which had denied the application for laches; the learned court of last resort saying that "the right to a continuance of an action on the death of a party, where the cause of action survives, is not of so absolute a character as to preclude the court, in the exercise of a legal discretion, having regard to all the circumstances, from denying a continuance." While it is for me to accept with respect these opposing decisions, it is not possible for me to follow them both, from which it follows that I am not required to heed either of them.

But in the case of equitable actions the court of appeals has uniformly decided that, under this same provision of the Code, the court has discretion to deny such an application for laches. Coit v. Campbell, 82 N. Y. 509; Greene v. Martine, 84 N. Y. 648; Hayes v. Nourse, 114 N. Y. 608, 22 N. E. 40; Duffy v. Duffy, 117 N. Y. 647, 23 N. E. 119. These were all equitable actions. But I do not see how any distinction is to be made between equitable and legal actions in the respect under consideration, though such a distinction seems to be suggested. Coit v. Campbell, supra. The Code provision under consideration makes and intends no such distinction; and, moreover, all such distinctions in practice were expressly abolished by the Code of 1848: "The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished." Section 69 (Present Code, § 3339). The Code did away with the two different systems of practice in legal and equitable actions, and substituted one system for both. It dealt only with the practice. It left the two substantive systems of law and of equity as they were, but inaugurated a single system of practice, applicable to each alike. Dalton v. Vanderveer, 31 Abb. N. C. 430, 29 N. Y. Supp. 342. Though instances could be cited to show that the change which the Code made has not even yet become an accomplished fact, owing to reluctance to accept it, nevertheless it does not seem that it may be suggested with a semblance of reason that a motion to continue a decedent's equitable action may be denied for laches, while a like motion to continue a common-law action may not. Therefore, deeming the said decisions in equitable actions controlling, I deny the motion.