(19 Misc. Rep. 197.)

### DE ST. LAURENT v. SLATER.

(Supreme Court, Special Term, Westchester County. December, 1896.)

1. CANCELLATION OF INSTRUMENTS—FALSE REPRESENTATIONS.
   A deed is not procured by fraud where the grantee wrote to the grantor that certain land owned by her had been sold for taxes, that she had been thereby divested of title, and that he wished to purchase a quit claim for the purpose of contesting the tax sales,—all of which was true, except the legal conclusion that grantor was divested of title by the tax sale,—and grantor, before giving the deed, had a full investigation of the title made by her attorney.

2. TRIAL—IN EQUITY—NONPREJUDICIAL ERROR.
   In actions in equity, error in admitting testimony will be disregarded, if the decision is just, and adequately supported by legal evidence.

Action by Esther De St. Laurent against George A. Slater to set aside a deed for fraud. Judgment for defendant.

L. L. Van Allen, for plaintiff.
W. R. Beach, for defendant.

GAYNOR, J. I find that the plaintiff was not induced to make the conveyance in question by false and fraudulent representations by the defendant. She acquired title in fee to the two lots of land in Mt. Vernon, N. Y. (Nos. 925 and 949), covered by the conveyance, in 1854. She removed from this country to Honduras in 1860, and has resided there ever since. She paid no taxes upon the said land thereafter. It was vacant and abandoned. Lot 925 was sold for nonpayment of general annual taxes 8 times between January, 1871, and March, 1877, and lot 949 11 times between August, 1863, and November, 1893, for terms of 1,000 years in every instance, except three terms of 40, 75, and 500 years. Two tax leases were made thereunder of lot 925 for terms of 40 and 500 years, in 1872 and 1878, and two of lot 949 for terms of 75 and 1,000 years, in 1864 and 1873. On December 10, 1894, the defendant (an attorney and counsellor at law) wrote to the United States consul at Honduras, requesting his services to get from the plaintiff a release to the defendant of her title to the said lots, and another lot at College Point, Long Island, and offering $200 for such conveyance. Upon this letter, and proof that the said two lots are now worth about $2,500 each, the claim of false and fraudulent representations is rested. The letter, in so many words, made the consul the defendant's representative to nego-

tiate the matter, and promised him a fair compensation for his serv-
ices.    The consul broached the matter to the plaintiff, and gave her
the letter.    The part containing the alleged false statements is as
follows:

"The two lots at Mt. Vernon were not very valuable, a hundred or two dollars
apiece in 1860. They have been sold by the state for taxes for many years, sub-
sequent to 1860, and are now occupied by people who bought same at those sales,
which vest the title in the purchasers for 1,000 years. Mrs. St. Laurent is
divested of all rights in both parcels, and, as an experiment, I am going to bring
a series of suits to try to set those sales aside, hoping the occupant will com-
promise. See, also, if she has any old papers relating to this property, and, if so,
secure same. If she be willing to sign the release, and I see no reason why not,
every possible interest of hers having been lost, I would suggest the following
course [here following a method for the deposit of the deed and payment of the
purchase money]."

Every statement of fact herein made is substantially true, includ-
ing that of the value of the lots in 1860.    The statements that the tax
sales vest title in the purchasers for 1,000 years, that the plaintiff is
divested of all rights in the land, and that every possible interest of
hers has been lost, are not of facts, but of legal inferences from the
fact of the sales (the first being the basis for and limiting the other
two), and fall short of those representations of law which may be the
foundation of a charge of fraud.    Bigelow, Frauds, c. 1, § 5.    But, if
they should be deemed statements of fact, they are modified by the
statement of defendant that he intends to bring suits to try to set
aside the tax sales.    The defendant fully discloses that his object in
seeking the plaintiff's title is the speculative one of trying, by suits,
to free his title of the tax sales, and get the occupants out; thus dis-
closing to the plaintiff that she may keep her title, and do the like
herself.    The defendant bore no relation of confidence or trust to
the plaintiff, and was, therefore, not under the obligation to her of
disclosure, and even of advice, which such a relation imposes.    They
were, under the law, at arm's length, and he had only to refrain from
deceiving her by false statements.

But the plaintiff did not make the conveyance in reliance upon
the defendant's statements.    She placed his said letter and the
whole matter in charge of an attorney in New York City for investi-
gation and advice.    He conferred with the defendant, considered the
tax sales, and advised the plaintiff by letter that, if she desired to
bring suits to set them aside, she would have to pay a retainer, and,
"finally, a considerable sum for professional services."    He acted in
entire fidelity to her, and she finally concluded not to bring the suits,
but to make the conveyance of her title to the Mt. Vernon lots to
the defendant for $500, and did so; they failing to agree upon a price
for the College Point lot.    It remains to be said that, as the plaintiff
introduced no evidence impeaching the tax sales, they appear to di-
vest the plaintiff of the possession and profits of the land for 1,000
years, and that fact forbids even a suggestion of fraud in the pur-
chase.

Objection was made by the plaintiff to the admission as evidence
of the letters of Rohback to her, tending to show that this action was
instigated and is conducted by the tax-lease owners and occupants of

the said lots for their benefit, instead of being a genuine and meritorious appeal by the plaintiff to the aid of equity. But it makes no difference whether said letters be deemed in evidence or out. In suits in chancery, errors in the admission or exclusion of evidence never were ground for reversal of the judgment, provided that, disregarding the evidence erroneously admitted, or duly considering the evidence erroneously excluded (which latter, however, could only be done where its extent and force were manifest), the decision was just, and adequately supported by legal evidence. This rule in equity was such a matter of course to bench and bar in preceding generations that it is quite impossible to find any equity case, except in recent years, where there was any question of it, or any confusion as between it and the stricter rule applied upon review to errors in the admission or rejection of evidence in actions in the common-law courts. The only question that arose over it was whether, when an issue of fact was sent out of chancery for trial in a common-law court before a jury, and the verdict and proceedings were certified back to chancery, the errors of the common-law judge in admitting and excluding evidence had to be regarded, upon a motion to set aside the verdict, the same as in the common-law courts; but it was held otherwise, viz. that, as the verdict of the jury was obtained only to inform the conscience of the chancellor, and he was free to adopt or reject it as he saw fit, he reviewed the evidence taken before the jury, in respect of errors in admitting or excluding evidence, in the same way as though it had been taken in chancery. Barker v. Ray, 2 Rrss. 75; Hampson v. Hampson, 3 Ves. & B. 41; Steptoe v. Pollard, 30 Grat. 689; Powell v. Manson, 22 Grat. 177; Forrest v. Forrest, 25 N. Y. 511; Clapp v. Fullerton, 34 N. Y. 195; Lansing v. Russell, 2 N. Y. 563. And the same thing is enacted in our Code of Civil Procedure, viz. that when an issue of fact in an equitable action is sent to a jury, "an error in the admission or exclusion of evidence, or in any other ruling or direction of the judge upon the trial, may, in the discretion of the court which reviews it, be disregarded, if that court is of opinion that substantial justice does not require that a new trial should granted." Section 1003. The rule in equity causes, stated above, had never been questioned in this state, and this provision of the Code fully recognizes it, by bringing within it trials by a jury of issues of fact in equity suits, in conformity with the foregoing decisions in England and in this country. Surely it may not be said that the rule survives, and applies to equity suits wherein one or more issues of fact are submitted to a jury, but not to equity suits tried entirely by the court. "In equity cases, it will be presumed that the trial judge disregarded incompetent or irrelevant testimony; and errors in the admission of such evidence do not afford ground for reversal, where there is sufficient testimony to support the decree." Jones, Ev. § 900; McSorley v. Hughes, 58 Hun, 360, 12 N. Y. Supp. 179. Law and equity are distinct systems. Dalton v. Vanderveer, 31 Abb. N. C. 430, 29 N. Y. Supp. 342. That they are now both administered by the same court, under one assimilated system of practice, renders them no less distinct. It is as true

now, as when each system was administered in a separate court under a separate practice, that evidence which would probably be mischievous with a jury would have no effect upon the trained mind of a judge.

It is true that, in Foote v. Beecher, 78 N. Y. 157, the learned chief judge, in his opinion, says:

"There is no distinction between actions of a legal and those of an equitable nature, in respect to the availability of exceptions taken upon the trial upon the admission of incompetent evidence, and no reason is perceived for such a distinction. Improper evidence may influence a court or referee as well as a jury."

My understanding while at the bar was that this expression was generally deemed not only obiter, but also an inadvertence, in view of the Code provision to the contrary cited above, which seems to have·been overlooked, as well as of the fact that such a distinction had unquestionably existed from the beginning.   In support of it, the opinion cites a sentence from the opinion in Williams v. Fitch, 18 N. Y. 551, a case of reversal for the reception of incompetent evidence, viz. that "the defendant was entitled to the referee's judgment upon the testimony which was competent."   But that was a common-law action, viz. for money had and received; and it is not questioned that in such an action, whether a jury be waived or not, the equity rule under consideration has no application.   In a former equity case (Vermilyea v. Palmer, 52 N. Y. 471), the same learned judge recognized as follows the distinction which he disclaims in Foote v. Beecher, viz.:   "It is quite clear that the court by which the trial is had is not bound to recognize exceptions which ought not to affect the merits; and, if so, it is equally clear that this court, reviewing the questions of law upon the trial, must adopt the same rule" (page 477),—and pointed out that that was the rule in chancery. The case of Eckerson v. Archer, 10 App. Div.·344, 41 N. Y. Supp. 802, is also without application, being an action of ejectment, and is, besides, a case which stands on its own peculiarities.

Judgment for defendant.